IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-189-FL

| | |
|---|---|
| TYRONE DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE #23, DE #25] pursuant to Rule 12 of the Federal Rules of Civil Procedure. Claimant Tyrone Davis ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The parties have filed memoranda in support of their respective motions, and the time for filing responsive briefs has expired. Accordingly, the pending motions are ripe for adjudication. The undersigned heard oral arguments of counsel on November 20, 2013. Having carefully reviewed the administrative record, the motions and memoranda submitted by the parties, and counsel's arguments, the undersigned recommends that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted and the final decision of the Commissioner be upheld.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on January 24, 2012, alleging disability beginning December 8, 2011. (R. 178–80.) His claim was denied

initially and upon reconsideration. (R. 75, 90.) A hearing before the Administrative Law Judge ("ALJ") was held on November 28, 2012, at which Claimant was represented by counsel. Melissa Stewart, an impartial vocational expert ("VE") appeared and testified. (R. 57–61.) On December 4, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–22.) On January 25, 2013, the Appeals Council denied Claimant's request for review. (R. 1–6.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the

2

relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c) (2013). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

3

In this case, Claimant alleges that the ALJ erred in finding that Claimant had the residual functional capacity ("RFC") to perform light work and in determining Claimant's credibility. (Pl.'s Mem. Supp. Mot. J. Pleadings [DE #24] at 7–8.)

**FACTUAL HISTORY**

**I.     ALJ's Findings**

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14.) Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, other disorders of the nervous system, and anxiety-related disorder. (*Id.*) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild to marked limitations in his activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work subject to the following limitations: (1) a sit/stand option defined as allowing Claimant to stand at his workstation and stretch for one to two minutes every half hour; (2) occasional climbing of ramps and stairs; (3) never climbing ladders and scaffolds; (4) occasional balancing, stooping, kneeling, and crawling; (5) no more than occasional exposure to unprotected heights and moving mechanical parts; (6) performing simple, routine, and repetitive tasks; and (7) performing at a non-production pace. (R. 15–16.) In making this assessment, the

4

ALJ found Claimant's statements about his limitations not credible to the extent they were inconsistent with the RFC. (R. 19.)

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a certified nursing assistant. (R. 20.) Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economy. (R. 20–21.)

**II.   Claimant's Testimony**

At the time of Claimant's administrative hearing, Claimant was 40 years old, a high school graduate, and working as a substitute teacher approximately four days a month. (R. 34–37.) Other than substitute teaching, Claimant has no other employment, and he receives unemployment and food stamps. (R. 37.) Claimant has not worked anywhere else since December, 8, 2011. (R. 38.) Before December 8, 2011, Claimant was employed for approximately a year with Rex Hospital as a patient care technician, where his duties included bathing, dressing, and generally caring for patients, as well as office work. (R. 41, 277.) Claimant's past work experience also includes working within the food service industry as a cook. (R. 230–37, 278.)

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. Claimant complained of pain in his back that is exacerbated by walking and requires him to sit or lie down for long periods of time. (R. 44.) Claimant has had two back surgeries to try to alleviate his pain. (R. 45.) According to Claimant, these surgeries have been unsuccessful. (*Id.*) Claimant's first surgery was done in order to address hip pain, tingling in Claimant's feet, sharp pains in Claimant's back, and severe muscle spasms. (*Id.*) Claimant also received a series of steroid injections to help with his back pain. (R. 46.)

5

Claimant testified that the injections appeared to work initially, but after the third injection, he only felt about two days of relief before the pain returned. (*Id.*) After surgery, Claimant's pain returned, and he had to ask for more help in caring for his patients. (*Id.*) He could not take his pain medication as needed due to his responsibilities as a patient care technician and the effects of the medication. (*Id.*)

After Claimant's first surgery, he began seeing a different doctor. This doctor prescribed more steroid injections, hydrocodone, and a steroid pack to help Claimant manage his pain. (R. 47.) Claimant also had a second surgery to decompress his spine. (R. 48.) In Claimant's opinion, the surgery did not work. (*Id.*) Claimant testified that he still has muscle spasms in his back running down into his leg, tingling, and pain when driving. (*Id.*) Additionally, Claimant is now having headaches and has isolated incidents of incontinence that may be related to a herniation encroaching onto a nerve root. (R. 48–49.) There is a possibility that this will lead to surgery in the future. (R. 50.)

Claimant stated he has weakness in his right leg, and if he steps wrong it can pop or cause a muscle spasm. (*Id.*) He also claims to have problems maintaining his balance. (*Id.*) Additionally, Claimant stated he has neck pain resulting from a bulging disk that causes pain to radiate down into his arms. (R. 51.) Claimant's worst pain occurs in his lower back and legs. (*Id.*) Claimant testified he can only stand for ten to fifteen minutes before having to sit, and he can only sit for twenty to thirty minutes before having to stand and change position. (R. 52.) Claimant can bend down for five or six minutes and lift a maximum of about ten pounds. (R. 52–53.)

Claimant takes several pain medications, including Lidoderm patches. (R. 53.) He is unable to clean his house without assistance from his ex-wife and another friend. (R. 53–54.)

Claimant spends about four hours a day lying down to alleviate pain. (R. 54.) Claimant tries to help his son with his homework, but the side effects of the pain medications make this difficult. (R. 55.) He drives his son to school, but has trouble sitting in a car for long distances. (*Id.*) Claimant does not do his own grocery shopping or shopping generally. (*Id.*)

Claimant testified that he cannot keep a job with regular hours because after about two days he would have problems, and his narcotic medication would affect his ability to work causing him to lose his job. (R. 43.)

### III. Vocational Expert's Testimony

Melissa Stewart testified as a VE at the administrative hearing. (R. 57–61.) After the VE's testimony regarding Claimant's past work experience (R. 58), the ALJ posed the following hypothetical question:

> If you would assume a hypothetical individual the same age, education, and past relevant work experience as the claimant, who possess [sic] the following residual functional capacity: they could perform the full range of light work with the following limitations: they would require a sit/stand option—as the DOT does not address the sit/stand option I therefore define it as allowing the claimant to stand up at their work station and stretch for one to two minutes every half-an-hour—that could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, crawl; have no more than occasional exposure to unprotected heights and moving mechanical parts; limited to simple tasks; limited to routine and repetitive tasks; and not able to perform at a production-rate pace, but could perform at a goal-oriented pace. Could this individual perform any of their past occupations—their past occupation?

(R. 58–59.) The VE responded in the negative. (R. 59.) The ALJ asked if there was other work available that would accommodate the restrictions in the hypothetical. (*Id.*) The VE responded in the affirmative and noted that the following positions would accommodate the requested restrictions: school bus monitor (light work, unskilled, DOT 372.667-042), office helper (light work, unskilled, DOT 239.567-010), and cashier II (light work, unskilled, DOT 211.462-010).

7

(*Id.*)   The VE concluded that all jobs existed in significant numbers in both the state and national economies.   (R. 59–60.)

The ALJ then asked a second hypothetical question:

If you assume a hypothetical individual of the same age, education, and past relevant work experience as the claimant: that they have the full limitations that I've mentioned in hypothetical number one, but now have the additional limitation of being limited to the sedentary range of exertional activity, with the additional impairment—I'm sorry, with—because of the combinations of impairments, would be unable to sustain an eight-hour workday for a 40-hour work week. Would the positions that you just described be available?

(R. 60–61.)   The VE responded that the above positions would not be available to such an individual and that such a claimant would not be able to perform any other position within the regional or national economy.   (R. 61.)

## DISCUSSION

### I.   Residual Functional Capacity

Claimant contends that the ALJ erred when he determined Claimant had the RFC to perform light work.   (Pl.'s Mem. at 7.)   The undersigned disagrees.

Before making a disability determination, the ALJ assesses the claimant's RFC based on all of the relevant evidence in the record.   20 C.F.R. § 404.1545(a)(1) (2013).   When assessing the claimant's RFC, the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."   20 C.F.R. § 404.1545(a)(4).   The ALJ will also consider the claimant's own statements concerning symptoms, such as pain.   20 C.F.R. § 404.1545(a)(3).

Claimant asserts that the evidence does not support the finding that he is capable of work on a sustained and continuous basis as required by the light work designation.   Citing multiple surgeries and medical records indicating problems in his back, Claimant states that the evidence

8

indicates he is unable to perform even sedentary work, and if the decision is not reversed and benefits awarded, the matter should be remanded in order to determine whether Claimant has the RFC to perform sedentary work. The record in this case demonstrates that the ALJ examined and weighed the evidence concerning Claimant's back surgeries and his other medical records. The ALJ analyzed both Claimant's testimony and his extensive medical records. The ALJ noted the multi-level degenerative disc disease and disc bulging in Claimant's spine, as well as the two surgeries Claimant had in order to address the pain in his back. Additionally, the ALJ took into account the multiple MRIs Claimant received due to his complaints of chronic back pain, the nerve conduction study of the upper right extremity conducted by Dr. Raymond Baule in which no significant abnormalities were shown, and the fact that Claimant received several injection therapies for his pain.

Claimant also saw Dr. Clinton Massey within two weeks of his hearing before the ALJ. Dr. Massey gave his opinion of the condition of Claimant's back stating:

> MRI scans provided by the patient were reviewed. These included a cervical MRI scan dated April 2009 and June 2012. Both of these are reviewed and showed changes of mild degenerative disc disease at the C3-4 and C5-6 levels with some right greater than left foraminal stenosis but no significant central canal stenosis. There has been no significant worsening between the 2009 and 2012 study.

(R. 534.) Concerning the MRIs performed in March 2012 and October 2012, Dr. Massey noted that there were "mild degenerative disc changes at multiple levels," "minimal disc collapse at all levels," and no significant stenosis detected. (R. 534.) Additionally, "the disc spaces were generally well maintained." (R. 534.)

The ALJ also acknowledged that Claimant was receiving unemployment benefits. (R. 20.) While this does not automatically preclude Claimant from being "disabled," it is a factor the

9

ALJ may consider in his RFC determination, since this reflects on a claimant's ability to work.  20 C.F.R. §§ 404.1512(b), 404.1513(d).

In making his RFC determination, the ALJ considered Claimant's testimony, Claimant's medical records, and Claimant's current employment situation, including Claimant's work as a substitute teacher and his receipt of unemployment benefits.  There is substantial evidence in the record supporting the ALJ's RFC determination that Claimant is capable of performing light work.

## II. Claimant's Credibility

Claimant contends that the ALJ erred in not considering the side effects of his medications and improperly discrediting Claimant's statements concerning his level of pain.  (Pl.'s Mem. at 10-11.)  The undersigned disagrees.

In assessing a claimant's credibility, the ALJ must follow a two-step process.  First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms.  *Craig v. Charter*, 76 F.3d 585, 594–95 (4th Cir. 1996).  Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms.  *Id.* at 595.  The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

10

SSR 96-7p, 1996 WL 374186, at *1. The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

> (1) Claimant's daily activities;
> (2) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, received for relief of pain or other symptoms;
> (6) Any measures used to relieve pain or other symptoms; and
> (7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2013); SSR 96-7p, 1996 WL 374186, at *3.

In the instant case, the ALJ first found that Claimant's medical impairments could reasonably be expected to cause Claimant's alleged symptoms. (R. 19.) In making this determination, the ALJ examined Claimant's medical records indicating Claimant had multi-level degenerative disc disease and disc bulging that required two surgeries in order to alleviate pain. (R. 17.) The ALJ took into account all of the procedures, injections, and pain medication Claimant endured. (R. 17–18.) The ALJ also considered the clinical assessment performed by licensed clinical social worker Jenny Tilford and the anxiety and depression Claimant experiences. (R. 18-19.) Upon examining all of the evidence associated with Claimant's back pain and anxiety, the ALJ found that Claimant's medically determinable back problems could cause his pain. (R. 19.)

Second, while taking into account Claimant's subjective complaints of debilitating pain, the ALJ observed that Claimant engaged in work activity after the alleged onset date. (*Id.*) Additionally, Claimant was receiving unemployment benefits, which required him to attest to his ability and willingness to work. (R. 20.) The ALJ also noted that Claimant's statements of debilitating pain were inconsistent with his most recently produced medical records. (R. 19.)

11

Claimant stated he could only stand for ten to fifteen minutes and only sit for twenty to thirty minutes; however, Dr. Massey detected only mild degenerative disc disease. The ALJ stated that though "work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have at least at times, been somewhat greater than the claimant has generally reported." (R. 19.)

Due to the inconsistencies among Claimant's statements and between Claimant's statements and the medical record, the ALJ appropriately found that Claimant's statements were not credible to the extent those statements were inconsistent with the RFC. The ALJ properly exercised his discretion in determining Claimant's credibility, and the ALJ's determination of Claimant's RFC is amply supported by the evidence of record.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE #23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE #25] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 3rd day of January 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge